**IN THE COURT OF APPEALS OF IOWA**

No. 17-1874
Filed January 24, 2018

**IN THE INTEREST OF L.S., M.S., D.E., and X.H.,**
**Minor Children,**

**J.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Ida County, Mary L. Timko, Associate Juvenile Judge.

        A mother appeals the termination of her parental rights to her children.

**AFFIRMED.**

        Peter A. Goldsmith of Boerner & Goldsmith Law Firm, P.C., Ida Grove, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

        Lesley D. Rynell of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

        Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her four children. She contends the State failed to prove the grounds for termination by clear and convincing evidence and termination is not in the children's best interests. She requests additional time to prove the children can be returned to her care. We review her claims de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

The juvenile court terminated the mother's parental rights to three of the children under Iowa Code section 232.116(1)(h) and (*l*) (2017), and to one of the children under (*l*). The court may terminate parental rights under section 232.116(1)(h) where clear and convincing evidence establishes the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Termination may occur under section 232.116(1)(*l*) where there is clear and convincing evidence that:

> (1) The child has been adjudicated [CINA] pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

The mother only disputes the sufficiency of the proof showing the last element of each paragraph: that the children cannot be returned to her care. Therefore, we need only examine whether clear and convincing evidence establishes this element. *See Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479–80 (Iowa 2001) ("Issues not raised in the appellate briefs cannot be considered by the reviewing court.").

The showing regarding the time in which the child must be able to be returned to the parent's care differs between paragraphs (h) and (*l*); in paragraph (h), there need only be proof the child cannot be returned to the parent's care "at the present time," which our supreme court has interpreted to mean "at the time of the termination hearing," *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010), whereas what constitutes a "reasonable period of time" under paragraph (*l*) will vary depending on the facts of each case, *see* Iowa Code § 232.116(1)(*l*) (specifying the child's age and need for a permanent home as factors to consider in determining what constitutes a reasonable period of time). We find the children could not be returned to the mother under either time standard—either at the time of the hearing or within a reasonable time thereafter.

The mother has a long history of methamphetamine abuse, and the Iowa Department of Human Services (DHS) has been involved with the family since 2014. In spite of the services offered to the mother, concerns about her substance abuse persist. In its termination order, the juvenile court states:

> In reviewing the voluminous amount of information concerning this case, the court is struck with the amount of patience provided to [the mother] by her service providers. The court, itself, has engaged in an exhaustive amount of patience for [the mother]. This patience has not translated into something positive for her children but, in fact,

has affected them negatively. . . . Despite her history, [the mother] was given the benefit of the doubt and a waiver of reasonable efforts request was not made in the current case. . . . Unfortunately, [the mother]'s survival skills of lying, manipulation, and drug usage overshadowed the work of the [DHS]. . . .

. . . .

[The mother's] testimony in court can best be described as programmed. She would deny every allegation and, if confronted about her testimony not being supported in the least by documentation and the testimony of service providers, she would just shrug it off and say she was telling the truth. This is exactly what [the mother] did in her first case when using and it is exactly what she did in the beginning of this case when using.

The juvenile court's order—which totals thirty-seven pages in length— chronicles the mother's substance-abuse history and her poor performance during the CINA proceedings in great detail. We need not elaborate further on those details here. Suffice it to say, clear and convincing evidence supports the juvenile court's findings as summarized above. Based on the mother's history of substance abuse and her inability to adequately address her substance abuse, the children would have been at risk of harm if returned to the mother's care at the time of the termination hearing or shortly therafter. Clear and convincing evidence establishes the grounds for termination under section 232.116(1)(h) and (*l*).

For the same reasons, termination is in the children's best interests. In making the best-interests determination, the primary considerations are "the child[ren]'s safety," "the best placement for furthering the long-term nurturing and growth of the child[ren]," and "the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The juvenile court found that

it is in the best interest of [the children] that the parental rights of their mother to them be terminated. They have waited in the wings long enough for her to establish permanency for them in their lives. At

> this point, it could be a significant amount of time before [the mother] will ever make choices that allow her to have an extended period of sobriety, let alone engage in a life of recovery. These children have waited long enough. They have been experimented with long enough while [the mother] was less than forthright with the court and her service providers to the detriment of their emotional well-being. They are currently in homes that are more than willing to provide some type of contact between them and their mother but also to be able to establish safe and appropriate boundaries for them.

Ample record evidence supports the finding that termination is in the children's best interests.

The mother requests additional time to prove the children can be returned to her care. Like the district court, we decline to delay the children's permanency any longer. The need for a permanent home is of primary importance when considering the children's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). Although the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Once the grounds for termination exist, time is of the essence. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). As the juvenile court noted,

> [The mother] has already had ten months that she squandered, except, perhaps, for the 30 days at Recovery by the Sea. She also had all of the services that could be provided to her in her previous four years of services when her children were adjudicated CINA. . . . In the adjudication and emergency removal order entered in this matter in February of 2017, the court outlined what [the mother] needed to do to have the children returned to her care. In addition, a very specific contract of expectations was drafted with [the mother]'s input. The court found that [the mother] would need to demonstrate a willingness to cooperate with a safety plan; a willingness to cooperate with the [DHS]; a willingness to address her

ongoing, severe substance abuse diagnosis; a willingness to admit her need for inpatient treatment and acknowledge her emotional behavior as problematic; and a willingness to set up boundaries with her associates, including, but not limited to, her family members whom she had previously identified as unhealthy for her. The court went on to state, "Without some legitimate and consistent commitment and demonstration on [the mother]'s part that she wants to return to a life of recovery, the children are not safe in her care . . . ."

The record reveals that [the mother] has not demonstrated a willingness to do any of those things. She did attend a short stay at an inpatient substance abuse treatment program but then fell back into her old behaviors. An additional six months would be a gift to [the mother] and an abuse to her children. . . . The bond that was created between the children and [the mother] has been broken. These children have been removed from her care on more than one occasion. When offered services that would allow her to be united with her children, she chose not to participate in them. When she, in conjunction with the [DHS], developed a contract of expectations, she failed to follow through. . . . [The mother] wasted a great deal of time in this case with her lying and manipulation—time that could have been spent rebuilding the trust that she destroyed by using again and denying the same for over five months only to be out of their lives for four weeks while in treatment and then to come back and use again.

Granting the mother additional time would be patently contrary to the best interests of these children.

We affirm the termination of the mother's parental rights to all four children.

**AFFIRMED.**